[No. 2054.]

Henry Harris v. The State.

Burglary — Intent — Charge of the Court.— In order to constitute burglary, the intent to commit theft (or a felony) must exist at the very time the house is entered. Wherefore, when the indictment alleged the intent to have been to commit the crime of theft, the trial court erred in omitting and refusing a charge to the effect that if the defendant first conceived the intent to steal after he entered the house, he should be acquitted.

Appeal from the District Court of Rusk. Tried below before the Hon. J. G. Hazlewood.

The conviction in this case was for the burglary in day-time of the room of one S. J. Brandon, in Rusk county, Texas, on the 6th day of November, 1885. A term of three years in the penitentiary was assessed against the appellant.

S. J. Brandon was the first witness for the State. He testified that he lived in Henderson, Rusk county, Texas. A pair of shoes belonging to the witness were taken from his room, in Henderson, on or about November 5, 1885. The theft was perpetrated in the day-time. The room from which the shoes were taken was one of the upper floor rooms over the Neal, Hill & Co. building, and was occupied by the witness and J. M. Wilson. The witness last saw those shoes in the room described about 11 o'clock on Thursday night, November 5, 1885. He first missed them between 7 and 8 o'clock on the night of Friday, November 6, 1885. The shoes were number seven and a half in size, and of the pattern known as kangaroo shoes. The witness bought them from Blanton & Nennelly. They were worth about $5 when taken.

The defendant was in the habit of going to the witness's room to get witness's clothes for the purpose of having them washed. He usually called for the clothes on Monday, and generally brought them back late in the week. Defendant's wife was employed to do the witness's washing, and defendant knew where the key to witness's room was kept hanging. He went to the room and collected witness's clothes frequently during the absence of the witness. The witness was the last person to leave the room on Friday, November 6, 1885. He locked the door and left the key in its usual place. The room door was unfinished on the outside, and the key was kept hung on an upright piece on the side, and could not be seen until the door in the hall was passed. The door described was the only means of entering the room. The defendant had the witness's con-

sent to enter his room only to get and return his washing. The defendant did not have witness's permission to enter the room on Friday, November 6, 1885. No one had witness's consent to take the shoes. Defendant brought the witness's washing home on Thursday evening.

On the Monday following, the witness saw the defendant and asked him if he had been in his room during Friday. He replied that he had not, but that he was at Mr. Gunkle's room on that day. He told the witness that the pair of shoes he then had on (an old pair) were the same shoes he wore to Overton. Witness next saw the defendant at the examining trial, when he had on the same pair of old shoes. Witness's clothes were brought home on Thursday night, the night before the theft, and witness wore some of them that night to the musical club. Witness did not know how many articles of clothing were taken out or brought back. He had missed none of the articles of clothing. If defendant brought any articles of clothing to witness's room on Friday, witness did not know it.

Cross-examined, the witness stated that the defendant was authorized to go into his room and get his clothes to be washed, and to return them, and generally did so without conferring with the witness. Witness and an officer searched the defendant's house on Monday after the theft, but found no shoes. Defendant authorized the search of his house. A kangaroo shoe was a soft, kid leather shoe, leather soles, and single low, flat heel. Defendant came to witness's room and got witness's washing on the Monday after the theft.

J. M. Wilson, the next witness for the State, testified that he, with S. J. Brandon, occupied the room from which the shoes were taken. The witness did not give his consent to the defendant to enter the room.

Cross-examined, the witness stated that he usually got up from bed before Brandon. Jim Holloman's wife was doing witness's washing at the time of the theft of Brandon's shoes. The witness could not remember the day of the week on which his washing was generally brought in, but knew that he generally, if not invariably, took his washing to his room himself. Witness could not recollect that his washing came home on the Friday the shoes were stolen. Witness did not think he went back to the room after he left it in the morning during the Friday of the theft. He had no recollection of ever sending his boy to his room with clothes.

Doctor Hays testified, for the State, that his office was situated

in the same building in which Brandon's room is located.   While witness was standing in the doorway, down stairs, on Friday, November 6, 1885, he saw the defendant go up the stairway of the said building.   The witness went to the foot of the stairway to see if the defendant wanted him, and saw the defendant turn towards Brandon's room at the head of the stairway.   Witness had no recollection of seeing the defendant any more on that day.   Defendant had a bundle in his hand as he went up stairs.   Witness's office was on the opposite side of the hall, up stairs, from Brandon's room.

Porter Sherwood testified, for the State, that he was a conductor on the H. & O. Railroad, and was on duty on Friday, November 6, 1885.   He had in his employ at that time a brakeman named Charley Bean.   Witness left Henderson about 4 o'clock on the evening of November 6, 1885.   At that time the witness had a pair of kangaroo shoes, just like a pair owned by S. J. Brandon, which he bought from Blanton & Nennelly.   Just after leaving Henderson the witness observed a negro standing on the platform between the passenger coach and the caboose.   That negro had on a pair of kangaroo shoes just like those owned by the witness and Brandon.   Witness observed them because it was an unusual thing to see a negro wearing shoes of that character.  · Witness could not identify the defendant as the negro he saw wearing the shoes described, on the occasion referred to.

Charley Bean testified, for the State, that he was a brakeman on the train of which Porter Sherwood was conductor.   Witness, while standing at the brake on the platform between the passenger coach and the caboose, on November 6, 1885, saw the defendant, wearing a pair of fine shoes, just like a pair owned by Mr. Sherwood.   Mr. Sherwood passed from the coach to the caboose while the witness and defendant were standing on the platform.   Witness afterwards heard that Mr. Brandon lost a pair of shoes.

Cross-examined, the witness stated that defendant went back to Henderson on Monday.

Lewis Hudson testified, for the State, that he saw the defendant at the depot in Henderson on Friday, November 6, 1885.   Defendant then had on a pair of very nice shoes, such as the witness had never seen before unless at Nennelly's.   The shoes were a tight fit, and were the subject of some conversation between the witness and the defendant.   Defendant said that he got the shoes from Chap. Hightower, at Barthold's.   He said that he was going to Overton.   When he came back from Overton defendant had on a different pair of shoes.   Witness asked him what he had done with the shoes he

wore off.  He replied that they were rather tight on his feet, and he had traded them off.  He then told witness that he had been visiting his uncle near Longview.  The shoes defendant wore off on Friday were second-hand shoes,—that is, they had been worn.

C. C. Hightower testified, for the State, that he was generally called Chap. Hightower.  He was a clerk in Barthold's store.  Barthold had never kept such a shoe as that lost by Brandon, and witness had never sold such a shoe to the defendant.

Mr. Gunkle testified, for the State, that he clerked for S. J. Brandon, and occupied a room in the Meyer building in Henderson, Texas.  Defendant was not in witness's room on Friday, November 6, 1885.  Witness always carried his room key with him.  Defendant always brought witness's clothes to him at the store, and witness always took them to the room himself.

Sheriff Rogers testified, for the State, that he saw the defendant wearing a very fine pair of close-fitting shoes, on the train on Friday, November 6, 1885.

The motion for new trial raised the question discussed in the opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney-General, for the State.

HURT, JUDGE.  This is a conviction for burglary.  It appears from the record that two parties occupied and controlled the house alleged to have been burglarized,—J. W. Wilson and the prosecutor, S. J. Brandon.  The charge is that appellant entered the house with intent to steal the property of Brandon; the entry was alleged to have been in the day-time.  The wife of appellant was employed to do the washing of Brandon, and the defendant was in the habit of getting the clothes and taking them out to be washed, and of returning them when washed.

The evidence is very unsatisfactory as to whether the appellant *entered* the house with intent to commit the theft, or whether he entered lawfully and conceived the intention to steal the shoes after entering the house.  Now, to constitute burglary in this case, the party must enter the house with intent to commit theft.  This intent must accompany — prompt — the entering.  We are treating of this case, not all cases of burglary.  But, in all cases of burglary, the intent to commit the felony must accompany the entry.

This being the law, and the evidence bearing on this point being so vague, the counsel for defendant requested a charge " that if the jury believe from the evidence that the defendant formed the intent to steal the shoes for the first time after entering the house or room of said Brandon and Wilson (if you believe he so entered and stole said shoes), then you will find the defendant not guilty." This charge, we think, was demanded by the circumstances of this case. Nor is its substance given in the general charge.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*